UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Taylor A. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
      Civil No. 24-2154-CDA

Dear Counsel:

On July 25, 2024, Plaintiff Taylor A. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 10 and 11). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on January 6, 2021, alleging a disability onset of January 1, 2016. Tr. 239-48. Plaintiff's claims were denied initially and on reconsideration. Tr. 87-127. On July 26, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 37-61. Following the hearing, on January 11, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 14-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

---

[1] Plaintiff filed this case against "Commissioner of Social Security" on July 25, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity (SGA) since January 6, 2021, the application date." Tr. 19. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "schizoaffective disorder; depression; anxiety-related disorders; and dissociative identity disorder." Tr. 19. The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypothyroidism; status post bilateral scrotal orchiectomy; intermittent bouts of severe sciatica; and Raynaud's. Tr. 19-20. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, routine, repetitive tasks with no direct interaction with the public and no more than occasional interaction with coworkers and supervisors, and no in-tandem tasks. He can have no more than brief superficial interaction with coworkers. He cannot work around hazards such as moving dangerous machinery and unprotected heights. He cannot do fast-paced tasks such as assembly line jobs involving production quotas.

Tr. 22-23. The ALJ determined that Plaintiff has no past relevant work but could perform jobs that existed in significant numbers in the national economy. Tr. 30-32. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 32.

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g., Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997);

*DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff raises one argument on appeal: that the "ALJ's decision is unsupported by substantial evidence because it lacks the required narrative explanation as to why no fast-paced tasks such as assembly line jobs involving no production quotas accommodates his moderate [concentration, persistence, or maintaining pace ("CPP")] limitation. Further, the four jobs provided at step five involve production work." ECF 10, at 3-10. Defendant counters that "the ALJ's decision provides the necessary level of discussion to allow this court to understand how the assessed [RFC] limitations account for Plaintiff's moderate [CPP] limitations" and that there is no indication that the jobs provided at step five "are 'fast-paced' or that the work involves 'production quotas,' the terms used in the [RFC] and presented to the vocational expert." ECF 11, at 6-16.

The Court finds that the ALJ properly accounted for Plaintiff's moderate CPP limitations and amply supported the RFC determination with substantial evidence. A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by merely restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a

claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

At step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 21. The RFC states, among other things, that Plaintiff "is limited to simple, routine, repetitive tasks with no direct interaction with the public and no more than occasional interaction with coworkers and supervisors, and no in-tandem tasks[,]" and Plaintiff "cannot do fast-paced tasks such as assembly line jobs involving production quotas." Tr. 21-22. In crafting the RFC, the ALJ's relied on the opinion of state agency psychological consultant Dr. Blusiewicz. This reliance provides support for the CPP limitations incorporated therein and enables the Court to perform meaningful review.

Dr. Blusiewicz opined, among other things, that Plaintiff had a moderate CPP limitation. Tr. 27. According to Dr. Blusiewicz, Plaintiff "could understand and remember simple and detailed instructions; maintain attention and concentration for two hours at a time as required performing simple and detailed tasks, sufficiently to complete an eight-hour day and 40-hour week; complete a normal workday and workweek without an unreasonable number and length of rest periods, with occasional interruptions from psychologically-based symptoms;" and "have casual and infrequent contact that would be required to answer questions and provide service that was not persistent[.]" Tr. 27.

The ALJ found Dr. Blusiewicz's findings "only partially persuasive," noting that "Dr. Blusiewicz supported her assessment with citations to medical evidence, and her findings are generally consistent with the evidence as a whole." Tr. 27. The ALJ observed that Plaintiff "has significant anxiety and difficulty interacting with others but has had only conservative treatment and has been able to receive feedback from others online about his short stories and establish and maintain a relationship with a girlfriend." Tr. 27. The ALJ noted that "[w]hile [Plaintiff's] symptoms affect his ability to concentrate, persist, and maintain pace, his mental status exams have shown good attention/concentration and unremarkable thought process" and he "also demonstrated the ability to maintain a structured routine." Tr. 27.

The ALJ crafted an RFC incorporating a limitation to simple, routine, repetitive tasks, and a restriction from fast-paced tasks such as assembly line jobs involving production quotas—the same provisions set forth in Dr. Blusiewicz's opinion. Tr. 21-22, 27. Given the ALJ's adoption of Dr. Blusiewicz's opinion related to Plaintiff' CPP limitation, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from performing tasks that require a fast pace or production quotas. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). As such, the Court determines that Dr. Blusiewicz's opinion "provided substantial support" for the RFC assessed in this case and that the ALJ's adoption of this opinion permits meaningful review. Tr. 21-22, 27; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's]

*Taylor A. v. Bisignano*
Civil No. 24-2154-CDA
July 30, 2025
Page 5

RFC, in part, on the state examiner's function-by-function analysis[.]  Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

In any event, this Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation.  *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace(i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]").  Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits."  *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

A careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provisions accounting for Plaintiff's moderate CPP limitations.  In examining Plaintiff's moderate CPP limitation, the ALJ acknowledged that Plaintiff "reportedly has difficulty concentrating for long periods due to internal dialogue between his alters, or 'souls.'" Tr. 21.  The ALJ noted that on consultative psychological exam, Plaintiff "appeared distracted and was unable to count backwards from 100 by 7's" but "he was able to spell, 'world,' backward and follow simple instructions."  Tr. 21.  The ALJ observed that treatment notes show Plaintiff has good attention/concentration, unremarkable thought process, good or excellent judgment, and impulse control.  Tr. 21.  The ALJ also noted that Plaintiff writes short stories and puts them on media sites for feedback, does simple chores, and prepares simple foods for himself.  Tr. 21.  The ALJ concluded that Plaintiff "has only moderate limitation in the abilities to focus attention on work activities and stay on task at a sustained rate."  Tr.  21.

In assessing Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony that it is difficult for him to complete tasks, he cannot handle more than one task, he has four alter egos with four different personalities, and that as a result of his daily auditory and visual hallucinations "he has poor focus and can only do one task a day."  Tr. 23-24.  The ALJ noted that Plaintiff "has several significant mental impairments with related mental functional limitations."  Tr. 24.  The ALJ observed that Plaintiff has "difficulty concentrating due to his internal dialogue," and that "he seemed distracted" on consultative psychological exam.  Tr. 24.  The ALJ found that Plaintiff's mental conditions "clearly impact his ability to perform multiple mental work tasks, including carrying out activities/instructions, interacting with others, and maintaining pace."  Tr. 24.

The ALJ observed, however, that "[s]everal factors" suggest Plaintiff "can carry out/perform and stay on task to complete simple, routine, repetitive tasks on a sustained basis and can perform work that involves no fast-paced tasks." Tr. 24. The ALJ noted Plaintiff's routine, conservative treatment—limited to outpatient therapy with no medication and no evidence of psychiatric hospitalization or crisis treatment—suggest that Plaintiff's "impairments are not so severe as to prevent, simple, routine, repetitive work with very limited social interactions and no fast-paced work." Tr. 24. The ALJ also found that Plaintiff's "psychologist has indicated that [Plaintiff] can understand written and oral instructions," a consultative psychological examiner found that Plaintiff "seemed capable of understanding and following instructions independently," Plaintiff's "mother has indicated that he does well with written instructions," and Plaintiff "denied memory problems during consultative psychological exam." Tr. 24-25.

Moreover, the ALJ found that Plaintiff "has been able to carry out at least simple, routine, repetitive activities of daily living that do not appear to be fast paced." Tr. 25. Specifically, Plaintiff completed chores, walked the dog, took care of his personal hygiene and shopping, took care of indoor housecleaning, microwaved food, enjoyed video games, puzzles, movies, writing short stories, and reading fiction. Tr. 25. The ALJ noted that "[w]hile he reportedly was dependent on his mother for functioning, treatment notes indicate that he has wanted to move away from his mother to live with his girlfriend" and in a mid-2021 report, Plaintiff "indicated he could do light housekeeping chores without assistance and do errands such as go to the Post office or grocery store without assistance." Tr. 25. The ALJ concluded that although Plaintiff "may be viewed as dependent, he also uses escapism to negate working on goals." Tr. 25.

The ALJ observed that Plaintiff "has been able to keep a routine and write short stories and post them on fan media websites for feedback." Tr. 25. The ALJ noted that, in early 2022, Plaintiff "managed well with a structured day and writing," and Plaintiff "did not find his hallucinations to be problematic or hindering his daily functioning." Tr. 25. The ALJ observed that, in mid-2022, Plaintiff saw more assimilation between himself and his alters, felt more confident in making his writing accessible, was going to continue to promote his work for the purpose of selling written work for income, and was able to continue with his daily routine, including hygiene and chores, despite reporting an upswing from a depressive episode. Tr. 25. Further, in late 2022, the ALJ noted that Plaintiff "continued to practice his writing and consider employment options that require autonomy, flexibility, and remote options." Tr. 25. The ALJ observed that, in mid-2023, Plaintiff "continued to use strategies for care to include journaling, exercising, and doing chores." Tr. 25.

After examining the objective evidence, the ALJ explicitly considered the directives of *Mascio* and found that the evidence shows that Plaintiff "can stay on task and persist for the completion of simple, routine repetitive tasks[,]" and that Plaintiff "can stay on pace to perform non-fast-paced tasks." Tr. 25. The ALJ concluded that "a limitation to simple, routine, repetitive, and non-fast-paced tasks adequately accommodates" Plaintiff's moderate CPP limitation. Tr. 25. Elsewhere in the ALJ's decision, the ALJ concluded that "given [Plaintiff's] history of difficulty concentrating, persisting, and maintaining pace, the undersigned finds he is further limited to simple, routine, repetitive tasks that are not fast paced." Tr. 30.

Plaintiff fails to identify any evidence that the ALJ failed to review. Instead, Plaintiff cites multiple portions of the transcript that he believes the ALJ improperly considered with respect to his moderate CPP limitation. *See* ECF 10, at 4-10. For example, Plaintiff argues that the evidence supports a greater degree of CPP limitation, and points to Dr. Suansilppongse's opinion, who opined among other things, that Plaintiff had a marked CPP limitation and "that his symptoms would significantly interfere with his ability for sustained concentration and persistence for task completion."[3] ECF 10, at 9-10; *see* Tr. 27. The ALJ assessed the exact evidence Plaintiff cites. Here, the ALJ found Dr. Suansilppongse's opinion unpersuasive because Dr. Suansilppongse "did not provide much explanation for his findings, and findings of marked limitation in [CPP], are not consistent with the totality of the evidence, including [Plaintiff's] treatment notes and activities of daily living." Tr. 28. The ALJ observed that treatment notes showed "evidence of excellent or good judgment/impulse control and good attention/concentration and unremarkable thought process" and that Plaintiff "has also been able to write short stories, maintain a routine, do chores, shop, and microwave food, suggesting that he can maintain adequate concentration/persistence to complete simple, routine, repetitive tasks on a sustained basis." Tr. 28. Moreover, the ALJ noted that during Plaintiff's consultative examination, Plaintiff "could not count backwards from 100 by 7's, but he was able to spell 'world' backward and follow simple instructions"; he scored 27/30 on the mini mental status exam; and conservative treatment, not including psychotropic medication, is "inconsistent with marked limitation in these areas." Tr. 28.

Plaintiff merely disagrees with the ALJ's conclusions, which are supported by substantial evidence. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 F. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). As such, the Court declines Plaintiff's request to reweigh evidence.

Moreover, Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally* ECF 10. Plaintiff also fails to explain how a more detailed explanation of the mental RFC might change the outcome of this case. As noted above, the ALJ's adoption of Dr. Blusiewicz's opinion and other review of the objective medical evidence of the record support the ALJ's determinations regarding Plaintiff's CPP limitations. *See Sizemore*, 878 F.3d at 80-81. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

Last, Plaintiff asserts that the four jobs the ALJ identified at step five, Drier Attendant (DOT #581.686-018), Stacker (DOT #222.587-046), Bagger (DOT #920.687-018), and Stuffer (DOT #780.687-046), involve production work. ECF 10, at 6-10; *see* Tr. 31-32. Specifically, Plaintiff argues that these jobs "include the temperament for 'Performing REPETITIVE or short-cycle work' and 'Working UNDER specific instructions.'" ECF 10, at 6-7. Plaintiff avers that the "Revised Handbook for Analyzing Jobs describes performing repetitive or short-cycle work as

---

[3] Plaintiff does not challenge the ALJ's evaluation of Dr. Suansilppongse's opinion on appeal.

'involv[ing] performing a few routine and uninvolved tasks over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption.'" *Id.* at 7 (citing Revised Handbook for Analyzing Jobs at 10-2) (brackets in original). Plaintiff further argues that "this temperament would equate to production work, which the ALJ stated Plaintiff could not perform." *Id.* Defendant counters that a task that "is repetitive and requires the adherence to 'set procedures, sequence, or pace' does not inherently describe 'production work,' and Plaintiff points to no source to support equating these terms.'" ECF 11, at 15. Moreover, Defendant argues that there is "no indication that the jobs provided are 'fast-paced' or that the work involves 'production quotas,' the terms used in the residual functional capacity and presented to the vocational expert as part of a corresponding hypothetical." *Id.*; *see* Tr. 23, 55-56.

The Court finds Plaintiff's argument unavailing. As discussed above, the DOT lists occupations existing in the national economy and explains the physical and mental requirements relevant to those occupations. *See Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015). During a hearing on a claim for benefits, a vocational expert ("VE") uses the information contained in the DOT to provide testimony on job related issues. *See* SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000). In relying upon a VE's testimony, an ALJ must ensure that any "apparent" conflicts between the DOT and the testimony are reasonably resolved. *Id.* at *4.

Here, the ALJ relied upon the testimony of a VE to conclude at step five that Plaintiff could perform the jobs of drier attendant, stacker, bagger, and stuffer. Tr. 31-32. The ALJ explicitly mentioned that the VE's "testimony is consistent with the information contained in the DOT, except for her statements regarding interaction with others, work in tandem, and fast-pace or assembly type work. However, the [VE] explained that her responses regarding those issues were based on her vocational experience." Tr. 32. The ALJ concluded that the VE's "explanation is reasonable, and the undersigned accepts her testimony." Tr. 32. A review of the DOT entry for the job of drier attendant reveals that this job does not involve production work or assembly line work. *See* DICOT 581.686-018 DRIER ATTENDANT, 1991 WL 684215 (1991). Moreover, as Defendant correctly asserts, Plaintiff does not provide any support that the job of drier attendant involves "fast-paced tasks such as assembly line jobs involving production quotas" as specified in Plaintiff's RFC and presented in the hypothetical to the VE.

"[T]he ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy" at step five. *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013). As such, and because Plaintiff offers no other bases for arguing that the ALJ erroneously identified the job of drier attendant at step five, the Court concludes that remand on the basis of the ALJ's step-five analysis is unwarranted.[4]

---

[4] Because the Court concludes that the ALJ identified at least one suitable job at step five, the Court does not reach Plaintiff's arguments regarding any apparent conflicts between the DOT and the ALJ's conclusions that Plaintiff could perform the jobs of stacker, bagger, and stuffer, as any such conflicts would amount to harmless error. *See Leggett v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1405, 2013 WL 1352298, at *3 (D. Md. Apr. 2, 2013) (determining that an ALJ's

*Taylor A. v. Bisignano*
Civil No. 24-2154-CDA
July 30, 2025
Page 9

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

potential step-five error regarding certain jobs was harmless because no such error existed as to at least one job identified by the VE).